Filed 12/5/22 P. v. Saldana CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALVARO LEAL SALDANA, JR.,<br><br>Defendant and Appellant. | F084146<br><br>(Super. Ct. No. 1246306)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from an order of the Superior Court of Stanislaus County. Dawna Reeves, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]   Before Poochigian, Acting P. J., Detjen, J. and Meehan, J.

Appointed counsel for defendant Alvaro Leal Saldana, Jr., asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant did not respond. We affirm the superior court's denial of defendant's Penal Code section 1170.95 (now section 1172.6)[1] petition.

## BACKGROUND[2]

On March 22, 2008, defendant and his brother, Ray Gutierrez, Jr.—both members of Varrio West Side Turlock, the primary Norteño gang in Turlock—attended a wedding reception in Hilmar. There, Gutierrez got into a fight with Miguel Perez, an inactive Norteño gang member with whom he had personal issues dating back a number of years. Others joined in, including Roger Villanueva, who was an active Norteño but also a friend of Perez. Villanueva did not get along with defendant and Gutierrez. In the fight, defendant got knocked out, possibly by Villanueva.

Although Villanueva was an active Norteño, he may have been in trouble with the gang for going to the aid of a dropout (Perez) against active gang members at the wedding reception.

A few days after the wedding, defendant happened to encounter Villanueva. Defendant pointed at him and made a gun gesture with his hands.

---

[1]    All statutory references are to the Penal Code.

Section 1170.95 has been renumbered as section 1172.6, effective June 30, 2022 (Stats. 2022, ch. 58, § 10), with no substantive change. For consistency, we will refer to former section 1170.95 as section 1172.6 throughout this opinion.

[2]    The factual portion of this background is taken from our prior opinion in *People v. Gutierrez* (Aug. 26, 2013; F062970) [nonpub. opn.] (*Gutierrez*), which contains an extensive factual statement.

We have ordered the record in *Gutierrez, supra*, F062970 and in *People v. Saldana* (Dec. 7, 2020; F079712) [nonpub. opn.] incorporated by reference into the present appeal.

In mid-May 2008, Gutierrez gave his cousin a gun wrapped in cloth and asked him to hold it for him.  About a week later, on May 25, 2008, Gutierrez asked for it back, then he, defendant, and the cousin drove to a barbecue in Turlock.  During the drive, defendant said someone might get into a fight.

When they were at the barbeque, Villanueva arrived.  He told defendant he wanted to "squash it" (let it go) and did not want any problems.  He extended his hand, but defendant refused to shake it.  Defendant looked angry and he walked into the backyard of the abandoned house next door.  Villanueva followed him, removing his hat, jacket, and gold chain as he went.

Gutierrez, who had been pacing quickly back and forth by the fence of the abandoned house, suddenly ran to the back, and, within seconds, witnesses heard multiple gunshots fired in rapid succession from a single gun.  Gutierrez and defendant immediately ran out from the yard and fled. Villanueva lay on the ground in the backyard, bleeding to death from multiple gunshot wounds.

On April 5, 2011, defendant and Gutierrez were convicted by jury trial of first degree murder (§ 187, subd. (a)).  In the verdicts, the jurors found that both defendant and Gutierrez committed murder, and the jurors found true the allegations that (1) both defendant and Gutierrez acted intentionally, deliberately, and with premeditation; (2) both defendant and Gutierrez were principals in the murder; (3) during the commission of the murder, defendant and/or Gutierrez (at least one of them) personally and intentionally discharged a firearm and proximately caused death (§ 12022.53, subds. (d) & (e)(1)); and (4) the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang as to both defendant and Gutierrez (§ 186.22, subd. (b)(1)).  In a bifurcated proceeding, the trial court found that both defendant and Gutierrez had suffered a prior serious felony conviction (§ 667, subd. (a)) and a prior "strike" conviction within the meaning of the "Three Strikes" law

3

(§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). The court sentenced both defendant and Gutierrez to a total term of five years plus 75 years to life in prison.

Both defendant and Gutierrez appealed, and in 2013, we affirmed their judgments in *Gutierrez, supra*, F062970.

On January 18, 2019, defendant filed a petition for resentencing pursuant to section 1172.6. In it, he asserted that he was convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of murder because of the recent changes made to sections 188 and 189.

On June 12, 2019, a hearing was held before the judge who presided at trial and sentenced defendant. Counsel for both parties stipulated defendant was convicted as a direct aider and abettor; hence, he did not meet the prima facie eligibility requirements for resentencing under section 1172.6. As a result, the superior court denied the petition.

In 2020, we affirmed the denial of the petition in *People v. Saldana, supra*, F079712, concluding defendant did not meet the requirements of section 1172.6 because he was convicted as a direct aider and abettor and he was not convicted of felony murder or murder under a natural and probable consequences theory.

On January 24, 2022, defendant filed a second petition for resentencing pursuant to section 1172.6 based on further changes in the law.[3] In this petition, he asserted the CALCRIM No. 401 instruction allowed the jury to impute malice to him solely because of his presence and participation in a crime by transferring the mens rea of the direct perpetrator (Gutierrez), rather than requiring the jury to find defendant himself had the specific intent to kill.

---

[3]    We have construed defendant's petition for writ of habeas corpus as a petition for resentencing pursuant to section 1172.6.

4

On January 31, 2022, the superior court denied the petition, stating that defendant's "current claims that the changes to [section 1172.6] now make him eligible for resentencing are in error." The court explained that we stated CALCRIM No. 401 required the jury to find defendant intended to aid and abet Gutierrez in committing first degree murder. (*Gutierrez*, *supra*, F062970.) The court noted that issues rejected on appeal cannot be renewed in a petition for a writ of habeas corpus.

On March 24, 2022, defendant filed a notice of appeal.

## **DISCUSSION**

Defendant contends the superior court should have granted his petition for resentencing pursuant to section 1172.6 based on new changes effected by Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775). We begin with a brief overview of the law.

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, substantially modified the law governing accomplice liability for murder, significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708; *People v. Lewis* (2021) 11 Cal.5th 952, 957), and eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*)). Senate Bill 1437 made these changes to "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, *to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life*." (Stats. 2018, ch. 1015, § 1, italics added.)

Senate Bill 1437 also added section 1172.6, which provides a procedure for resentencing, authorizing an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the

5

conviction and resentence the defendant on any remaining counts if he or she could not now be convicted of murder because of the changes Senate Bill 1437 made to the definitions of the crime. (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, *supra*, 10 Cal.5th at p. 843.)

Then, in 2021, Senate Bill 775 extended the provisions of section 1172.6 to include convictions for attempted murder and manslaughter. This bill modified the law to "expand the authorization to allow a person who was convicted of murder under *any theory* under which malice is imputed to a person based solely on that person's participation in a crime … to apply to have their sentence vacated and be resentenced," and to clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, §§ 1–2, italics added.)

Here, defendant was convicted of being a direct aider and abettor of first degree murder—he was *not* convicted under a theory that imputed malice to him. The jury found defendant had his *own* specific intent to commit murder. As we concluded in *Gutierrez*, *supra*, F062870, the instructions on aiding and abetting in defendant's trial properly required the jury to find that *defendant* possessed the specific intent to commit murder. Furthermore, the jury expressly found on defendant's verdict form that in committing the murder, *defendant* acted intentionally, deliberately, and with premeditation.

Neither Senate Bill 1437 nor Senate Bill 775 eliminated direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 183, citing *Gentile*, *supra*, 10 Cal.5th at p. 848; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) Thus, the new changes in law effected by Senate Bill 775 do not bring defendant within the eligibility of section 1172.6; he is still ineligible for resentencing as a matter of law.

6

The superior court did not err in denying defendant's section 1172.6 petition.

## **<u>DISPOSITION</u>**

The order denying defendant's section 1172.6 petition is affirmed.